## COMMONWEALTH *vs.* BOSTON & LOWELL RAILROAD CORPORATION.

On a petition to county commissioners to lay out a highway " over and along " an existing bridge, which was thirty-two feet wide, the commissioners have power to lay out the way fifty feet wide, if they think the public convenience requires it; and although they merely adjudge, in the first instance, that the way prayed for is required by common convenience and necessity, yet it is no departure from this order, if they subsequently locate the way wider than the bridge described.

So if they adjudge that the way should be laid out fifty feet wide, it is not repugnant to this order subsequently to determine that only thirty-two feet should be made convenient for use at that time; and although the whole width of the way, as laid out, be not finished for travel, an obstruction erected on the part unfinished is a nuisance, for which an indictment will lie.

In this case, which was argued in Boston, January 31, 1853, by *E. Buttrick*, for the commonwealth, and by *F. C. Loring*, for the defendants, the points involved sufficiently appear from the opinion of the court, which was delivered by

SHAW, C. J. This is an indictment of the defendant corporation for obstructing a highway leading from Charlestown to Cambridge, over and along the bridge known as the Cross

Bridge, or Prison-Point Bridge. It is conceded by the agreed facts, that the defendants have erected a fence and parts of buildings over and along a part of the land adjudged by the county commissioners to be a highway; but they contend that the highway was not legally laid out, and that, of course, the land on which they have thus placed the structures in question was their own; and, not being rightly taken for a highway, they are guilty of no violation of law in thus using it.

This highway was laid out in 1839, and, being in part over tide-water, it was done, in pursuance of a special authority vested by the legislature in the county commissioners for that purpose, by *St.* 1838, *c.* 174. The record of the proceedings of the county commissioners, laying out this highway, is produced, and many exceptions are taken to its regularity. One general answer may be made to many, perhaps most of them, which is, that they are exceptions very proper to be considered on a petition for a *certiorari,* but which, until the judgment is reversed, do not affect the question of the existence and establishment of the highway, and, of course, afford no ground of defence against a charge of obstructing it. *Lowell* v. *Hadley,* 8 Met. 192. It is a judgment of a tribunal having jurisdiction of the subject-matter, and, until reversed, not open to be impeached collaterally. Many of the provisions of the statute relative to the laying out of highways are directory, and not conditional; and a failure to comply with them does not render the proceedings void. The inconvenience would be obviously great, if, every time one is charged with a nuisance in a highway, he could raise every possible question of the compliance of the commissioners with the provisions of the statute; and the weight of this consideration is greatly increased where, as in this case, the highway has been laid out so many years, and the doings acquiesced in by all parties concerned.

One or two considerations urged in the able argument for the defendants we will consider. One is, that the commissioners had no jurisdiction, because they did not pursue the petition under which their authority was invoked. It is stated

in support of this objection, that the petition of Nathaniel Austin and others to the commissioners was, to lay out the Cross Bridge, from Prison Point to the Canal Bridge, which was in fact thirty-two feet wide, under which they laid out the bridge, and nine feet on each side of it, making the highway fifty feet wide. This is made of the more importance in the defence, because it is insisted that, at least, the laying out of these nine feet on each side of the bridge was void, and it is that part of the way included in these nine feet only, on the one side or the other, that the defendants have obstructed by any fence or building. It seems to us that this exception arises from a misconception of the terms and effect of the petition. The petition prays that a public highway and bridge should be laid out and established from the southerly end of Austin Street, in Charlestown, over and along what is now called the Cross Bridge, in a southerly direction, to the north side of the bridge called the Canal Bridge, in Cambridge. Here the *termini* are given. " Over and along" the bridge is not necessarily limited to the width of the bridge. The width of the way was to be determined by the commissioners, according to their views of the present and prospective travel to be accommodated by it. We think, therefore, that the commissioners did not go beyond the prayer of the petition, even if it were competent for petitioners for a highway, between fixed *termini*, to limit the commissioners as to the width of the way.

Another objection is somewhat similar to the preceding, but varies in some respects, and it is this : that the commissioners who made the location did not follow the adjudication of the commissioners who laid out the way. The argument is this : The commissioners who laid out the way adjudged only the highway prayed for in the petition was of common convenience, and as the way prayed for was over the bridge only thirty-two feet wide, there had been no adjudication to the effect that a way fifty feet wide was of common convenience and necessity. This objection we think is answered by the same suggestion as the preceding, that the petition was not so limited, and therefore the judgment was not so limited.

But there is a much more satisfactory answer, which is, that it is not the province of the first judgment of the commissioners to fix the precise limits or direction of the highway, nor in fact does it do so. The commissioners adjudge that a highway between the *termini* described in the petition, is of common convenience and necessity; and afterwards, by another act, and after special notice to all persons concerned, the commissioners, by the significant term "location," fix the precise limits and direction. These are very distinct functions, and were formerly done by distinct bodies. Now the functions are equally distinct, though done by the same board of commissioners; the adjudication of common convenience and necessity being done in court, with the recording officer present, and making record thereof; the location being made abroad, on view, and subsequently reported to the same court in order to be made matter of record. The county commissioners, therefore, we think, in making the location, did not vary from their own previous adjudication, that such a highway was of common convenience and necessity.

The defendants have made another objection to the laying out of this highway, to this effect, that although the commissioners have, in one part of their record, adjudged that a way of fifty feet in width, is of common convenience and necessity, yet in a subsequent part, they have annulled that judgment, by declaring that a highway there is not required by the public, beyond the width of the bridge. The state of the record is this; they describe a single line running along the centre of the bridge, and lay out a way, fifty feet wide, being twenty-five feet distant on both sides from said central line. Now, as the bridge is thirty-two feet wide, sixteen on each side of said central line, the way, as laid out, extends nine feet, on each side beyond the line of the bridge. The commissioners afterwards, in directing, as they have authority to do, at what time and in what manner said highway shall be at present constructed, state, that being of opinion that it was unnecessary and inexpedient to construct and complete said highway or bridge upon so extensive a plan and costly manner, &c., do determine and order, that the

inhabitants of Charlestown and Cambridge, shall, on or before the 1st of September, then next ensuing, so repair said cross-bridge as to make it safe and convenient, &c.

It appears to the court, that there is no repugnancy between these two adjudications. By the laying out, the public acquire a perpetual easement, and the commissioners are to regard the probable future wants of the public, as well as the present exigency, in determining the width of the way, to be taken for public use. It is this adjudication and the location pursuant to it, which takes the land and appropriates it to public use, or as the phrase sometimes used is, condemns the land, and vests the right in the public, without regard to its construction or actual use. This principle was severely tested, but definitely settled by the case of *Harrington* v. *County Commissioners*, 22 Pick. 263. By the adjudication and location, the right to an easement in the land of the width of fifty feet, became vested in the public, the way was thereby established, and any encroachment on it was a nuisance. But the commissioners had also a power, and it is made their duty, in their return, to determine and specify the manner in which such new highway should be made, and also the time in which the same should be completed. Rev. Sts. *c.* 24, § 10. Under this power they direct that the bridge, that is, thirty-two feet in the middle of the fifty feet way thus laid out, shall be made safe and convenient for travel, within a specified time. It seems to us, therefore, that it is the common course of commissioners laying out a highway, of a specified width, and then directing that a certain part of it, less than the whole, shall be graded, wrought, and made safe and convenient, which course is within the authority of the commissioners.

But it was urged in the argument, that a different rule had been settled by the decisions of this court, several of which were cited. The case of *Loker* v. *Damon*, 17 Pick. 284, decides that when a highway has been adjudicated to be of common convenience and necessity, and located, not that the public right to the use of the land is not complete, but when the owner of the land, pursuant to the provisions of law, has

had time granted by the commissioners, to take off all property upon it, an individual cannot justify breaking down the fence, on the ground that it is a public highway. The right of the land-owner to keep his land inclosed had not ceased, nor had the right of the traveller to use the way accrued. But this is not inconsistent with the vested right of the · public to use the land to make a highway, at the proper time. The other cases cited, *Drury* v. *Worcester*, 21 Pick. 44; *Bliss* v. *Deerfield*, 13 Pick. 102; *Bowman* v. *Boston*, 5 Cush. 1, determine the principle, that notwithstanding a highway has been laid out and located, the town does not become responsible to a traveller passing on it, for damage caused by a defect therein, until it has been graded and fitted for use as a highway, and by some express or implied notice, opened for use. Many other cases might be cited which proceed on the same principle. It assumes that although a way has been located, and thus potentially established, so far as the right of the public is concerned, yet that some time must necessarily elapse in ordinary cases, to remove obstructions, grade it, and fit it for use, and the town cannot be chargeable with damages, under the statute, for the existence of obstructions and defects, which they have had no time to remove. This is not inconsistent with the decision here made.

Upon the facts agreed, the court are of opinion, that the indictment against the defendant corporation is sustained.